Tawanda JOHNSON, Respondent,

v.

Phillip H. MARCH, Appellant.

No. ED 96630.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 24, 2012.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 14, 2012.

Application for Transfer Denied
Sept. 25, 2012.

Phillip H. March, St. Louis, MO, pro se.

Sara E. Reeb, Heather Highland, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Phillip March (Father), acting *pro se*, claims that the trial court erred in denying his motion to vacate or set aside an administrative order entered by the Family Support Division (FSD) requiring Father to pay child support. As we understand Father's points on appeal, Father argues that the trial court erred in denying his motion to vacate the administrative order because: (1) the order was invalid, unenforceable, and void; (2) the trial court lacked authority to enforce the order; and (3) the trial court lacked personal jurisdiction over Father. Father also claims the trial court erred in failing to strike the documents filed by the FSD and denying Father's motion to reconsider. We affirm.

### Factual and Procedural Background

Father and Tawanda Johnson have a son, who was born January 25, 2003.[1] On May 11, 2005, the FSD entered a notice and finding of financial responsibility ordering Father to provide health insurance and pay child support for his son in the amount of $725.00 per month. FSD served Father with the notice and finding of financial responsibility on August 26, 2005. On September 9, 2005, Father wrote the FSD a letter requesting an administrative hearing and asking the FSD to "send all mailing [sic] to ... 8310 Hawkesbury, St. Louis, MO, 63121."

On January 23, 2006, the administrative hearing officer conducted a telephone hearing in which Father, Ms. Johnson, and Rhonda Cropp, a FSD technician, participated. The administrative hearing officer

---

1. The record reflects that Father executed an affidavit acknowledging his paternity.

entered a decision and order on April 3, 2006, ordering Father to pay child support in the amount of $532.00 per month ("2006 Order"). The FSD mailed the 2006 Order to Father at 8310 Hawkesbury on April 5, 2006. The trial court docketed the 2006 Order on May 2, 2006. Father did not file a timely petition for review, and, pursuant to Section 536.110.1, the order became final on May 5, 2006, thirty days after the FSD mailed the order to Father.

On November 11, 2010, Father filed his third amended motion to vacate, set aside, or correct the judgment ("Motion to Vacate") arguing, *inter alia,* that the 2006 Order was void for failure of service.[2] The trial court held a hearing on Father's Motion to Vacate on January 31, 2011. The trial court found that the FSD mailed Father the notice and finding of financial responsibility at the address he provided and entered an order dismissing Father's Motion to Vacate.

Father filed a motion to reconsider on February 24, 2011 ("Motion to Reconsider"). The trial court heard testimony and arguments on Father's Motion to Reconsider and the underlying Motion to Vacate and denied both motions on April 11, 2011.[3] Father appeals, *pro se.*

### Standard of Review

■ "In an appeal following judicial review of an agency action by a trial court, we review the decision of the agency, not the trial court." *Lajeunesse v. State,* 350 S.W.3d 842, 844 (Mo.App. W.D.2011). We

2. Father filed his original motion to vacate, set aside, or correct the judgment on September 15, 2010.

3. At the hearing on April 11, 2011, the trial court also "re-denominated" the January 31, 2011 order as a judgment.

4. All statutory references are to RSMo 2000 as supplemented, unless otherwise indicated.

defer to the administrative agency's findings of fact but review its interpretation, application, or conclusions of law *de novo. Id.*; Section 536.140.3.[4]

### Discussion

In his first point on appeal, Father claims the trial court erred in denying his Motion to Vacate the 2006 Order because the order was "invalid, unenforceable, and void as a matter of law."[5] More specifically, Father contends that the 2006 Order is void because the administrative hearing officer was biased against him. In support of this allegation, Father contends that Ms. Johnson falsely testified that she earned less income than reflected in her payroll check stub and the hearing officer knowingly based his child support calculations upon this misinformation.

■ Rule 74.06(b)(4) provides that a court "may relieve a party or his legal representative from a final judgment or order . . . [if] the judgment is void." Rule 74.06(b)(4); *Forsyth Fin. Group, LLC v. Hayes,* 351 S.W.3d 738, 740 (Mo.App. W.D. 2011). "In the sound interest of finality, the concept of void judgment must be narrowly restricted." *Platt v. Platt,* 815 S.W.2d 82, 84 (Mo.App. E.D.1991) (*quoting* 7 J. Moore & J. Lucas, Moore's Federal Practice § 60.25[2] (2d ed.1991)). A judgment is void under Rule 74.06(b)(4) "only if the court that rendered it lacked jurisdiction of the parties or the subject matter or acted in a manner inconsistent with due

5. Although not clear in Father's point relied on or argument, we believe he is challenging the validity of the 2006 Order as it was docketed by the trial court on May 2, 2006 and gained "all the force, effect, and attributes of a docketed order or decree of the circuit court. . . ." Mo.Rev.Stat. § 454.490.1.

process of law." [6] *Baxi v. United Techs. Auto. Corp.*, 122 S.W.3d 92, 96 (Mo.App. E.D.2003). "[J]udgments have been declared void for lack of due process when litigants have been denied notice of critical proceedings or were subject to involuntary waiver of claims." *Forsyth Fin.*, 351 S.W.3d at 741. A judgment is not void simply because it is erroneous. *Id.* at 740.

At the administrative hearing on January 23, 2006, Ms. Johnson and Ms. Cropp testified as to Ms. Johnson's income. The hearing officer asked Ms. Cropp to "please go ahead and explain the parent paying support's income and the parent receiving support's income," and Ms. Cropp testified that "the custodial parent's income is $1,972." Later in the hearing, the hearing officer asked Ms. Johnson, "How much do you make; what is your salary?," and Ms. Johnson replied, "It's like 1,200 a month; 11 to 12 a month." In the 2006 Order, the FSD found: "Mother's monthly gross income is $1,200.00." The 2006 Order explains: "Mother's income is based on her credibly [sic] testimony that she earns $1,200.00 per month. Based on that, Mother's monthly gross income is $1,200.00 per month."

▮ Here, Father alleges that the hearing officer erred in finding that Ms. Johnson earned $1,200.00 per month, and not $1,972.00 per month, and as a result, the child support obligation required by the 2006 Order was too high. As previously stated, this court will not find a judgment void merely because it is erroneous. *Forsyth Fin.*, 351 S.W.3d at 740. To the extent that Father argues that the 2006

Order is void because Ms. Johnson "knowingly testif[ied] falsely" and the hearing officer "knew he was not being truthful" when he based the child support calculation on Ms. Johnson's testimony that she earned $1,200.00 per month, such a claim does not state a basis for finding the judgment "void" under Rule 74.06. "It is clear that in this State a judgment by a Court, having jurisdiction, may not be attacked collaterally because of perjured testimony going to the merits of the case." *Vincel v. Vincel*, 439 S.W.2d 227, 228 (Mo.App.1969). "The alleged perjury here goes solely to the matters tried and furnishes no basis for declaring the judgment void." *Id.*

▮ As to Father's claim that the hearing officer was biased against him, we presume "that a judge acts with honesty and integrity and will not preside over a trial in which he or she cannot be impartial." *Worthington v. State*, 166 S.W.3d 566, 579 (Mo. banc 2005). "Bias must arise generally from an extrajudicial source that results in the judge forming an opinion on the merits based on something other than what the judge has learned from participation in the case." *Davis v. Schmidt* 210 S.W.3d 494, 520 (Mo.App. W.D.2007). Our review of record on appeal and, in particular, the transcript of the January 23, 2006 administrative hearing, reveals no demonstrable bias by the hearing officer. Point denied.

▮ In his second point on appeal, Father claims the trial court erred in denying Father's Motion to Vacate the 2006 Order because the trial court lacked authority to enforce the 2006 Order.[7] More specifical-

---

6. Father does not challenge the FSD's authority to issue the 2006 Order or the FSD's personal jurisdiction over Father. We note, however, that the FSD has authority to determine and enforce child support obligations pursuant to Section 454.400. FSD had personal jurisdiction over Father because Father

resided in St. Louis County and signed an acknowledgment of paternity form, which "shall be considered a legal finding of paternity." Mo.Rev.Stat. § 210.823.1.

7. Father claims that the trial court lacked "subject matter jurisdiction" over the 2006 Order. A trial court's subject matter jurisdic-

ly, Father contends that the trial court docketed the 2006 Order fewer than thirty days after it was issued by the FSD, thereby depriving the trial court of authority and violating Father's right to due process. In response, the FSD asserts that there is no statutory requirement that the trial court wait thirty days before docketing an administrative order.

■ Under Sections 454.470 and 454.475, a parent may challenge an allegation contained in an FSD notice and finding of responsibility by requesting a hearing by an administrative officer, whose findings and orders become the decision of the FSD director. Mo.Rev.Stat. §§ 454.470.4, 454.475.5. Copies of the hearing officer's order "shall be mailed to any parent, person having custody of the child and the division within fourteen days of issuance." Mo.Rev.Stat. § 454.475.5. A parent who is adversely affected by the order may obtain judicial review by filing a petition for review in the trial court within thirty days of the order's mailing. *Id.; see also State ex rel. Hilburn v. Staeden*, 91 S.W.3d 607, 610 (Mo. banc 2002). Meanwhile, "[a] true copy of any order entered by the director ... along with a true copy of the return of service, may be filed with the clerk of the circuit court ... in the county where either the parent or the dependent child resides or where the support order was filed." Mo.Rev.Stat. § 454.490.1. "Upon filing, the clerk shall enter the order in the judgment docket," and "[u]pon docketing, the order shall have all the force, effect, and attributes of a docketed order or decree of the circuit court...." *Id.*

Nowhere does the statute require the trial court to wait thirty days before docketing the child support order. Nor does the process of filing and docketing the child support order in the trial court toll a parent's thirty-day period to file a petition for review in the trial court. Mo.Rev.Stat. § 474.475.5. As previously discussed, the hearing officer entered the 2006 Order on April 3, 2006 and mailed it to Father at 8310 Hawkesbury, his last known address, on April 5, 2006. In compliance with Section 454.490.1, the trial court filed and docketed the 2006 Order on May 2, 2006. The trial court's act of docketing the 2006 Order in no way impeded Father's ability to seek judicial review. Per statute, Father was allowed thirty days, or until May 5, 2006, to seek judicial review of the 2006 Order, and he failed to do so.

Father also contends that his "only recourse ... is to ask for a modification," and this "clearly deprives [Father] of due-process of petitioning and exhausting his remedy to judicial review." As previously stated, the trial court's docketing of the 2006 Order did not preclude Father from seeking judicial review on or before May 5, 2006, when the order became final. Furthermore, the Missouri Supreme Court has held that Section 454.490.1, which allows child support orders to be entered with "all the force, effect, and attributes of a docketed order or decree of the circuit court," is constitutional. *State ex rel. Hilburn*, 91 S.W.3d at 612. The Supreme Court explained that chapter 454 "provides numerous safeguards on administratively entered support orders," including: the right to challenge a FSD notice and finding of financial responsibility by requesting a hearing before an administrative

tion is determined by the Missouri Constitution, which provides circuit courts "original jurisdiction over *all cases and matters*, civil and criminal." Mo. Const. art V, sec. 14 (emphasis added); *see also J.C.W. ex rel. Webb*

*v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009). We therefore consider Father's point on appeal as a challenge to the trial court's authority.

hearing officer and the right to file a timely petition for judicial review of the hearing officer's decision. *Id.* at 609–10.

Finally, we note that Father is not without recourse because, pursuant to Section 454.500, "at any time after the entry of an order ... the obligated parent ... may file a motion for modification with the director." Mo.Rev.Stat. § 454.500; *Hayes v. Porter*, 30 S.W.3d 845, 847 (Mo.App. E.D.2000). If Father remains dissatisfied with the director's order, then he has the opportunity to file a timely petition for judicial review pursuant to Section 454.475. *Hayes*, 30 S.W.3d at 847. Point denied.

In his third point on appeal, Father claims the trial court erred in denying his Motion to Vacate "because the trial court lacked personal jurisdiction over him because he was never served and [there is] no proof that he was served." We disagree.

■ Father "is responsible for notifying the [FSD] of any change of address or employment." Mo.Rev.Stat. § 454.470.1(13). On September 9, 2005, Father sent a letter to the FSD directing it to "send all mailing [sic] to ... 8310 Hawkesbury." Section 454.470.5 requires the FSD to send "a copy of the order by regular mail addressed to the parent's last known address...." Mo.Rev.Stat. § 454.470.5. The record on appeal contains a certificate of service stating that a clerk for the administrative hearing officer mailed the 2006 Order to Father at 8310 Hawkesbury on April 5, 2006. We presume "that a document duly mailed has been received by the addressee." *Weidner v. Anderson*, 174 S.W.3d 672, 678 (Mo. App. S.D.2005); *see also* Rule 43.01(d) ("Service by mail is complete upon mailing.").

■ Father maintains that, because he cannot read the signature on the certificate of service, it does not constitute proof of service. Father cites no support for his contention that the signature on a certificate of service must be legible. Point denied.

■ In his final point on appeal, Father claims the trial court erred in not striking the documents filed by the FSD and in denying Father's Motion to Reconsider the order of January 31, 2011, in which the trial court dismissed Father's Motion to Vacate. More specifically, Father asserts that the FSD failed to provide him copies of the documents[8] it presented to the trial court at the hearing on January 31, 2011 until immediately prior to that hearing. Father further alleges that the letter to the trial court and the certification of record, which state that Gina Boxberger, chief counsel for the FSD, mailed the documents to Father on January 10, 2011, were "deceptive and false."

The purpose of the trial court's hearing on January 31, 2011 was to consider Father's Motion to Vacate the 2006 Order on the grounds that the FSD failed to provide him proper notice. At the beginning of the hearing, the trial court stated that it showed "the entire file to Father." Father then affirmed that the signature on the September 9, 2005 letter to the FSD, in which Father directed the FSD to mail all communications to the Hawkesbury address, was his. The trial court entered an order the same day dismissing Father's Motion to Vacate because the trial court found that the FSD mailed Father the finding and notice of financial responsibility.

Father filed a Motion to Reconsider the January 31, 2011 order, and the trial court

---

8. A certification of record signed by Gina Boxberger, chief counsel for the FSD, states that the documents included "a complete transcript of the entire record, proceedings and evidence before the Agency and includes a copy of the final Agency decision entered in this case."

heard arguments on April 11, 2011. At the hearing, Father conceded that the trial court allowed him time to review the FSD's records prior to the January 31, 2011 hearing, but complained that the amount of time was insufficient. Father argued, "[T]hey should have served me with a copy with the new information so I could have had time for proper rebuttal." The trial court responded, "Sir, I am giving you that time right now. So tell what it is—what else you got that—because I am correcting that error today. You have had the time. It's now April. So you have had all that time. What else have you got to tell me?," and Father replied, "That's about it, Your Honor."

■ "The trial court is vested with broad discretion to control discovery," and "[t]his discretion includes the trial court's choice of remedies to address the non-disclosure of evidence during discovery." *Zimmer v. Fisher*, 171 S.W.3d 76, 79 (Mo. App. E.D.2005). Based on our review of the record, we hold that the trial court did not abuse its discretion in failing to strike the documents filed by the FSD on January 31, 2011. We further conclude that any prejudice that Father might have suffered as a result of the FSD's alleged late production of the documents was remedied by the trial court at the April 11, 2011 hearing, and the trial court did not err in denying the Motion to Reconsider. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

GLENN A. NORTON, J., and ROBERT M. CLAYTON III, J., concur.